IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. TAJ TESFAYE HAYES, Defendants. | CR 15-50-BLG-SPW<br><br>OPINION and ORDER |

Defendant Taj Hayes has moved to suppress statements made to law enforcement both before and after his formal arrest. On June 26, 2015, this Court held a hearing on the motion. At the hearing, the Court heard testimony from F.B.I. Special Agent Brandon Walter ("Agent Walter"), F.B.I. Supervisory Senior Resident Agent Travis Burrows ("Agent Burrows"), and Missoula Police Detective Guy Baker ("Det. Baker").

For reasons more fully discussed below, the Motion to Suppress is granted in part and denied in part. The Court finds that Hayes was subject to a custodial interrogation without receiving the *Miranda* warnings when questioned in a hotel hallway. Therefore, the government may not introduce those statements during its case-in-chief. The Court does not find that Hayes was illegally arrested nor

1

involuntarily made any statements. Accordingly, the Court does not suppress Hayes's statements given at the F.B.I. office.

**I. Background**

From March 26-28, 2015, the F.B.I. and the Montana Department of Criminal Investigation ("M.D.C.I.") jointly investigated commercial sex trafficking in Billings. On March 27, agents responded to an advertisement on Backpage.com under the adult escort section. The agents exchanged text messages with a phone number with an out-of-state area code. The agents received a picture from the phone of a woman going by the name of Layla. Eventually, the agents made plans for M.D.C.I. Agent Gary Seder ("Agent Seder") to work undercover and meet Layla at the Crowne Plaza hotel the evening of March 27.

Agent Burrows and Det. Baker, among others, were assigned to surveillance for the undercover operation. Earlier that evening, Agent Burrows was waiting in line at the Crowne Plaza's front desk to get information related to a separate investigation. While in line, Agent Burrows overheard a conversation that seemed suspicious at the time. Agent Burrows heard the front desk clerk tell a woman that her card had been declined. The woman said that she was going put more money on the card and departed the Crowne Plaza's lobby.

Agent Burrows walked to his car in the Crowne Plaza parking lot after his meeting at the front desk. In the parking lot, Agent Burrows saw the same woman

he observed at the front desk.  The woman was leaning into a window of a dark-colored sedan with California license plates.  In the car was an African-American male.  Agent Burrows took out a pen and wrote the car's license plate number on his hand.  The woman walked back into the Crowne Plaza, and the male left the parking lot.

Later in the evening, around midnight (*see* Doc. 34-3), Agent Seder met with Layla at the Crowne Plaza bar.  Agent Burrows observed the meeting and recognized Layla as the woman he observed earlier at the front desk.  Agent Seder and Layla left the hotel bar to go to Layla's room on the sixth floor.  A number of surveillance team members, including Agent Burrows, got on the elevator with Agent Seder and Layla.  Det. Baker missed that elevator but rode up on a separate elevator.

Everybody exited the elevator on the sixth floor, and the surveillance team followed Layla and Agent Seder as they walked to Layla's room.  At some point down the hallway, Layla recognized that the men were following her and asked Agent Seder something to the effect of, "Are those guys with you?"  Agent Burrows stopped and turned back to the elevators.

While he was walking back to the elevators, Agent Burrows saw an African-American male, later identified as Defendant Taj Hayes, wearing a backpack and also approaching the elevators.  Agent Burrows introduced himself as an F.B.I.

agent and showed his credentials. Agent Burrows then said something to the effect of, "I'd like to talk to you for a minute. Do you have any identification on you?"

Hayes said he did not have any identification with him. Agent Burrows asked if Hayes had anything with his picture and name on it. Hayes set his backpack down and rustled through it. Hayes again said he did not have any identification, but he handed Agent Burrows a set of car keys.

Agent Burrows took the keys and noticed a large plastic key fob on the key ring that indicated that the keys belonged to a rental vehicle. Inside the plastic key fob was a piece of paper. One line on the paper started with "LIC" followed by a series of numbers. Agent Burrows compared the number on the key ring with the number he wrote on his hand in the parking lot. The numbers matched; the numbers following "LIC" on the plastic key fob were the same as the license plate number of the car that Agent Burrows observed Layla speaking into.

By that point, Det. Baker had arrived on the sixth floor. Agent Burrows explained the situation to Det. Baker and other nearby agents. Agent Burrows turned to Hayes and said, "Why don't you go with these guys and speak with them." Agent Burrows then went down to the lobby to obtain registration information for Layla's room.

Det. Baker took Hayes down the hallway and around a corner in the opposite direction from where other agents were questioning Layla. They stopped at a small alcove that contained a pop machine. The alcove is shown below:



Hayes stood against the far wall in the alcove while Det. Baker and two other agents stood at the alcove's entrance.

Det. Baker and the agents questioned Hayes. Hayes stated that he was from California and that he was traveling to the Bakken oil fields for employment. Hayes denied traveling with a female and was vague about how he got to Billings.

During this time, other agents gained entrance into Layla's room. Within Layla's room they found Hayes's identification. Agent Seder came over to Hayes and, in a blunt and confrontational manner, challenged Hayes about his identification in Layla's room. Hayes then acknowledged knowing Layla, but he maintained that he did not travel to Billings with her. Hayes claimed that he only knew Layla from encounters in Las Vegas and Salt Lake City. The agents informed Hayes that they did not believe he was being truthful.

Det. Baker asked Hayes for consent to search him, to which Hayes agreed. Hayes set down his backpack, turned around, and put his hands on the wall. Det. Baker patted him down and found a cell phone in Hayes's front pocket. Det. Baker removed the cell phone, and Hayes volunteered that it was not his phone. The agents seized the phone as evidence.

Agent Seder advised Hayes that he was under arrest and placed him in handcuffs. Det. Baker and another agent escorted Hayes out of the hotel to their vehicle outside. They transported Hayes to the Billings F.B.I. Office, which is within four or five blocks of the Crowne Plaza. Hayes never received the *Miranda* warnings at the Crowne Plaza. Hayes was in the alcove on the sixth floor for around 20 to 25 minutes.

At the F.B.I. Office, Det. Baker brought Hayes to an interview room. Agent Walter arrived to assist Det. Baker with interviewing Hayes. Agent Walter gave

6

Hayes the *Miranda* warnings and provided an advice of rights form for Hayes's signature. Hayes hesitated for a few moments, but eventually he signed the form.

Hayes signed the advice of rights form at 1:23 a.m. on March 28, 2015. The interview was multi-part, with different agents taking turns interviewing Hayes. During the interview, Agent Seder entered the room with Hayes's backpack and asked permission to search it. Hayes waffled on the decision, but ultimately consented to the search. Agent Seder took items out of the backpack and noticed some baseball caps. The caps found in the backpack matched caps that Layla was wearing in her Backpage.com advertisement. Hayes said he was frustrated with how Agent Seder removed the items from the backpack and told him to stop the search. Agent Seder returned the items into the backpack and exited the interview room. During this encounter Agent Seder was blunt and straightforward with Hayes.

Hayes was engaging during the interview and did not demonstrate low intelligence. At one point during a break, Hayes laid on the floor and took a nap. The interview lasted until Hayes requested an attorney around 5:00 a.m.

## II. Hayes's Motion to Suppress

Hayes moves to suppress statements made to law enforcement both at the hotel and at the F.B.I. Office. In support of his motion, Hayes advances four arguments: (1) The *Miranda* warnings should have been provided at the hotel; (2)

7

Hayes's statements at the Crowne Plaza were involuntary; (3) Hayes's statements at the F.B.I. Office should be suppressed as a result of an illegal arrest; and (4) Hayes's statements at the F.B.I. Office were involuntary. The Court will address each argument separately.

### III. *Miranda* Warnings at the Crowne Plaza

Hayes argues that he was subject to a custodial interrogation when he was questioned in the alcove on the sixth floor of the Crowne Plaza. The government concedes that Hayes was interrogated at the Crowne Plaza and was not given the *Miranda* warnings. The issue is whether Hayes was in custody at the time of the questioning.

The protections established in *Miranda v. Arizona*, 384 U.S. 436 (1966), only apply when a person is "subjected to custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 434 (1984). "Whether a suspect is in custody turns on whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *United States v. Crawford*, 372 F.3d 1048, 1059 (9th Cir. 2004) (citations omitted). A suspect is in custody when, "in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012) (internal quotations and brackets omitted).

The test is from the objective view of a reasonable person, not the defendant's subjective mindset. *J.D.B. v. N. Carolina*, 131 S. Ct. 2394, 2402 (2011).

Courts must consider all of the circumstances surrounding the interrogation to determine whether the defendant was in custody. *United States v. Coutchavlis*, 260 F.3d 1149, 1157 (9th Cir. 2001). Some factors to consider are: (1) the location of the questioning; (2) its duration; (3) statements made during the interview; (4) the presence or absence of physical restraints during the questioning; and (5) the release of the interviewee at the end of the questioning. *Howes*, 132 S.Ct. at 1189. Additional factors include: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; and (3) the degree of pressure applied to detain the individual. *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001). These factors are not exhaustive, and other considerations may be dispositive to "the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators." *United States v. Bassignani*, 575 F.3d 879, 884 (9th Cir. 2009) (quotation omitted).

The Court finds that Hayes was in custody while being questioned at the Crowne Plaza. The Court bases its finding, in part, on Det. Baker's candid testimony. At the hearing, Hayes's counsel asked Det. Baker if Hayes could not

leave while in the alcove. Det. Baker responded, "He was being detained, yes. He was – he was being detained there."

A review of the circumstances supports Det. Baker's statement that Hayes was not free to terminate the questioning and leave. The agents took Hayes from the relatively high-traffic area of the elevator bank to a small alcove located down the hallway. While still a public area, law enforcement purposely removed Hayes to a more isolated location for questioning. Once in the small alcove, three law enforcement officers stood by the entrance to prevent Hayes from leaving.

The agents also confronted Hayes with evidence of his guilt. Agent Seder bluntly accused Hayes of associating with a suspected prostitute by questioning the presence of his identification in Layla's room. Other agents told Hayes that they did not believe his explanation of how he knew Layla. This confrontation with evidence of guilt and Agent Seder's blunt tone supports the finding of a custodial interrogation. *Bassignani*, 575 F.3d at 884.

In sum, a reasonable person in Hayes's situation would not have believed he could freely walk away from the interrogators. Hayes was subject to a custodial interrogation. Accordingly, the agents should have provided the *Miranda* warnings. Since the *Miranda* warnings were not given, Hayes's statements made in the sixth floor alcove are inadmissible in the government's case-in-chief. *See United States v. Gomez*, 725 F.3d 1121, 1125-26 (9th Cir. 2013).

**IV. Whether Hayes voluntarily gave the statements at the Crowne Plaza**

The next question is whether Hayes provided those statements voluntarily. Hayes should have received the *Miranda* warnings at the Crowne Plaza, but law enforcement failed to provide them. However, "[t]he failure of police to administer *Miranda* warnings does not mean that the statements received have actually been coerced." *Oregon v. Elstad*, 470 U.S. 298, 310 (1985).

The test for determining whether a statement was voluntary is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Fisher*, 137 F.3d 1158, 1165 (9th Cir. 1998) (internal quotation omitted). The defendant's state of mind is not enough to render a statement involuntary. *Colorado v. Connelly*, 479 U.S. 157, 165-66 (1986). Instead, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Id*. at 167. Factors include (1) the defendant's youth; (2) the defendant's intelligence; (3) lack of advice of constitutional rights; (4) the length of detention; (5) the repeated and prolonged nature of the questioning; and (6) the use of physical punishment such as deprivation of food or sleep. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).

11

In reviewing the totality of the circumstances, the Court finds that Hayes voluntarily gave statements to law enforcement at the Crowne Plaza. Hayes is an adult and did not demonstrate a low level of intelligence. The agents failed to advise Hayes of his constitutional rights, but this factor is not dispositive. The agents only detained Hayes for around 25 minutes at the Crowne Plaza. There was no physical punishment.

By all accounts, Agent Seder was abrupt and blunt with Hayes. But Agent Seder did not act so aggressively that Hayes's will was overborne. Hayes maintained his denial of illegal activity. Matter-of-fact questioning does not render statements involuntarily. Hayes voluntarily provided the statements at the Crowne Plaza.

**V. Whether Hayes was illegally arrested**

Hayes argues that all his statements were "tainted fruit" of his illegal arrest at the Crowne Plaza. Hayes analyzes whether the taint of his arrest was dissipated by the time of questioning under the four-factor test from *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975). Hayes's argument presupposes that he was illegally arrested. For reasons discussed below, the Court finds that the agents had reasonable suspicion to conduct an investigatory stop at the Crowne Plaza. This reasonable suspicion blossomed into probable cause and they formally arrested Hayes and transported him to the F.B.I. Office.

A. The detention at the Crowne Plaza

The Court first addresses the detention at the Crowne Plaza. As discussed above, the Court finds that the agents detained Hayes when they transported him to the alcove on the sixth floor. The question becomes whether the agents had reasonable suspicion to believe that Hayes had committed an offense.

The Fourth Amendment allows police to conduct investigative stops when the officers have "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Reasonable suspicion requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct. *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). "The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence and less than probable cause." *United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000). The standard is "not a particularly high threshold to reach." *United States v. Valdes-Vegas*, 738 F.3d 1074, 1078 (9th Cir. 2013).

The court must look at the totality of the circumstances of each case when determining whether reasonable suspicion existed. *Arvizu*, 534 U.S. at 273. Each fact cannot be considered individually and must be evaluated in the context of the case. *Valdes-Vegas*, 738 F.3d at 1078. In other words, a series of factors, that when looked at individually are consistent with innocent behavior, can amount to reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 9-10 (1989). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273.

The Court finds that the agents had reasonable suspicion to temporarily detain Hayes. Agent Burrows observed Layla speaking in the Crowne Plaza parking lot with a man in a vehicle with California plates. As Layla and the agents were on the sixth floor, Agent Burrows saw Hayes approach the elevator. Agent Burrows approached Hayes, identified himself as an F.B.I. agent, and asked for identification.[1] Rather than identification, Hayes voluntarily provided what appeared to be keys to a rental vehicle. On the key chain, there were the letters "LIC" followed by a series of numbers. The numbers matched the license plate to the vehicle that Agent Burrows previously observed in the parking lot.

---

[1] Hayes was not seized at this point, as officers do not violate the Fourth Amendment merely by asking questions and requesting identification. *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991).

Based on the totality of the circumstances, Agent Burrows reasonably believed that Hayes was somehow involved with Layla's prostitution when he told Hayes to go with Det. Baker. It would have been a strange coincidence if a man appeared around midnight trying to leave the same floor where a suspected prostitute was approaching her room, and the man possessed keys to a rental car previously associated with the suspected prostitute. Based on those facts, Agent Burrows reasonably suspected Hayes of engaging in illegal behavior.

B. The arrest and transportation to the F.B.I. Office

Hayes was formally arrested when he was placed in handcuffs and transported to the F.B.I. Office. The next question is whether the agents developed sufficient facts to raise their reasonable suspicion to probable cause.

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to cause a reasonable person to believe that the suspect has committed an offense. *United States v. Smith*, 802 F.2d 1119, 1123 (9th Cir. 1986). The facts supporting probable cause must be known at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

The Court can use Hayes's un-Mirandized, yet voluntary, statements made in the Crowne Plaza in its probable cause analysis. *United States v. Patterson*, 812

F.2d 1188, 1193 (9th Cir. 1987); *see also United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1048 (9th Cir. 1990). The *Miranda* rule is a prophylactic that sweeps beyond the actual right against compelled self-incrimination. *United States v. Patane*, 542 U.S. 630, 639 (2004). In other words, *Miranda* may be violated even in the absence of a Fifth Amendment violation. *Elstad*, 470 U.S. at 306-07. When a statement is made voluntarily but in violation of *Miranda*, there is no actual Constitutional violation, and the "fruit of the poisonous tree" doctrine does not apply. *Patane*, 542 U.S. at 642.

The Court finds that the agents' reasonable suspicion developed into probable cause during Hayes's questioning. Hayes initially denied knowing Layla. However, agents located Hayes's identification in Layla's room. When confronted with this evidence, Hayes shifted his story and said he had previously met Layla in Las Vegas and Salt Lake City. After Det. Baker located the phone in Hayes's front pocket, Hayes suspiciously denied ownership in an unprompted statement.

Hayes's shifting story, the location of his identification in Layla's room, and his denial of the phone's ownership elevated the agents' reasonable suspicion to probable cause to arrest. Taking these factors in conjunction with the factors that created reasonable suspicion, the objective facts and circumstances within the agents' knowledge reasonably led to a conclusion that Hayes had committed a prostitution-related offense.

16

In conclusion, Hayes was never illegally arrested. Agent Burrows had reasonable suspicion to order Hayes's temporary detention. This reasonable suspicion developed into probable cause by the time Hayes was arrested and transported to the F.B.I. Office. Since there was no illegal arrest, an analysis under *Brown v. Illinois* is unnecessary.

**VI. Whether Hayes voluntarily gave the statements at the F.B.I. Office**

Hayes's final argument is that his statements at the F.B.I. Office were involuntarily made. In reviewing the same standard set forth in Section IV of this Opinion and Order, the Court finds Hayes voluntarily made the statements at the F.B.I. Office.

The Court was not presented with any evidence that the interviewing agents applied physical or psychological pressure to coerce Hayes's statements. Hayes had received the *Miranda* warnings and signed an advice of rights form after contemplating it for a few moments. The interrogation lasted about four hours. While four hours is a fairly lengthy amount of time, "coercion typically involves far more outrageous conduct." *Haswood*, 350 F.3d at 1028. Again, while Agent Seder bluntly asked questions in the interview room, his demeanor did not rise to the level of coercion. The interviewing agents did not apply physical punishments such as denying food or sleep. In fact, the agents allowed Hayes to nap during one

of the breaks. In reviewing the totality of the circumstances, the Court finds that Hayes voluntarily provided his statements at the F.B.I. Office.

**VII. Conclusion**

For the reasons stated above, Hayes's Motion to Suppress (Doc. 18) is GRANTED IN PART as to Hayes's argument that his questioning at the Crowne Plaza violated *Miranda*. The government may not use statements made by Hayes while he was in the alcove on the sixth floor of the Crowne Plaza in its case-in-chief. The motion is DENIED in all other aspects.

DATED this 10th day of July, 2015.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge